DECISION
The above-captioned matter is before the Court for decision following a non-jury trial on Plaintiffs' complaint. Essentially, this case involves a dispute over the ownership of a small, triangular section of land approximately 300 square feet in area (hereinafter referred to as the disputed area), comprised of two oak trees, a flower bed, a forsythia bush, and some grass.[1]
Plaintiffs, the would-be disseisors herein, claim to have acquired ownership of the disputed area by adverse possession, and they seek to quiet title to this land by virtue thereof. However, the Defendants, holding record title to the disputed area, refute Plaintiffs' claim of adverse possession, and they have asserted a counterclaim against Plaintiffs for trespass.[2]
Both sides present with diametrically different stories regarding what took place in the disputed area from 1985 through 1996 (when suit was brought). To briefly summarize the salient arguments, Plaintiffs claim that they, both on their own and through their gardener, have improved and maintained the disputed area throughout this time period (i.e., by cutting the grass; planting and tending to the forsythia bush; tending to the flower bed; etc.) without ever asking for or receiving Defendants' permission. Further, Plaintiffs categorically deny that Defendants ever performed any of their alleged activities (described below) in the disputed area, and they proffer the testimony of two longtime neighbors to support their position. In addition, Plaintiffs note and stress that Defendants had no neighbors testify on their behalf; this, according to plaintiffs, offers further proof that Defendants never used the disputed area. In sum, Plaintiffs argue that all requisite elements of an adverse possession claim (see discussion below) have been satisfied, and that the Court should award them title to the disputed area. The Defendants, on the other hand, urge the Court to believe that they also used the disputed area on a regular basis (i.e., by cutting the grass, raking leaves, removing fallen tree limbs, and otherwise maintaining the area; by practicing golf thereon; by their children placing a soccer net therein; etc.). Regarding the neighbors' testimony described above, Defendants note that said neighbors were not their social friends, and that they could not conclusively state that Defendants never performed these activities; they only stated that they didn't remember seeing Defendants do them. Moreover, Defendants claim that they gave Plaintiffs permission (1) (in the fall of 1988) to plant flowers and the forsythia bush in the disputed area, and (2) (in 1985) to pass through the disputed area in order to turn around a lawn mower on their driveway.[3]
Finally, Defendants aver that they knew from the time they purchased their home in 1985 that they owned the disputed area.[4] Hence, Defendants argue that Plaintiffs' claim for adverse possession must be denied.[5]
With this as background, the Court ceases being narrator and resumes its role as adjudicator. Rule 52 (a) of our Rules of Civil Procedure mandates that when cases are tried upon the facts without a jury, the Court shall find the facts specially and state separately its conclusions of law thereon. As one can plainly see from the foregoing, just about everything in this case is disputed. Nevertheless, based on the evidence adduced at trial which it deems most credible, the Court finds the following facts to have been sufficiently established:
 1. Plaintiffs own property located at 75 Granite Drive in East Greenwich, Rhode Island. This property is in a subdivision known as Stoneridge Acres and was purchased by Plaintiffs in June of 1985.
 2. Defendants own property located at 65 Granite Drive in East Greenwich, Rhode Island. Defendants purchased their property, which directly abuts Plaintiffs' parcel to the south, in August of 1985.
 3. The disputed area, described above, juts out from Defendants' driveway toward Plaintiffs' front yard. (See Plaintiffs' Exhibits 1, 2, 5 and 6).
 4. In the spring of 1986, Plaintiffs employed a gardener, Nick Cardillo, to landscape their property. Said landscaping work included, inter alia, the planting of a forsythia bush in the disputed area. (See Plaintiffs' Exhibit 4 — Cardillo's 1986 bill for services rendered). During the period of time between April of 1986 and the fall of 1996, said forsythia bush was maintained by Plaintiffs and by Mr. Cardillo.
 5. During that same period of time, the flower bed in the disputed area was also cultivated and maintained on a regular (though seasonal) basis by Mrs. Charren and by Mr. Cardillo. Said maintenance included, but was not limited to, weeding the bed, planting bulbs, pruning, and edging the grass around the bed.
 6. Such use of the disputed area by Plaintiffs during these years was non-permissive.
 7. Neither Janet Pryzgoda nor Adrienne O'Neill (the two longtime neighbors who testified for Plaintiffs at trial) ever saw Defendants cutting the grass in the disputed area, maintaining the flower bed therein, or otherwise using the disputed area. On the other hand, said neighbors did observe Mr. Charren cutting the grass thereon.
 8. In June of 1996, Defendants had a survey performed on their property in connection with putting a pool in their backyard. This survey alerted the parties that Defendants' property line did not run along Defendants' driveway but, in fact, extended across it, and that the disputed area was contained within Defendants' property.
 9. Shortly thereafter, Defendants had stakes put up along the newly-located property line cordoning off the disputed area. (See Plaintiffs' Exhibit 5; Defendants' Exhibit D). Suit was ultimately brought in the fall of 1996, and in October or November, Defendants erected a wooden fence thereon. (See
Plaintiffs' Exhibit 6 and 8; Defendants' Exhibits B and C).
Such additional facts as are necessary to this decision shall be set forth in the discussion that follows.
Section 34-7-1 of our General Laws provides, in pertinent part, that:
 "Where any person or persons, or others from whom . . . they derive their title, . . . shall have been for the space of ten (10) years in the uninterrupted, quiet, peaceful and actual seisin and possession of any lands, . . . for and during that time, claiming the same as . . . their proper, sole and rightful estate in fee simple, the actual seisin and possession shall be allowed to give and make a good and rightful title to the person or persons, their heirs and assigns forever; . . . ."
In construing this statute, the Rhode Island Supreme Court has stated that in order to prevail on an adverse possession claim, a claimant's possession must be actual, open, notorious, hostile, under claim of right, continuous, and exclusive.Anthony v. Searle, 681 A.2d 892, 897 (R.I. 1996) (citations omitted); Walsh v. Cappccio, 602 A.2d 927, 930 (R.I. 1992). Moreover, the indicia of adverse possession must be established for a period of ten years. Locke v. O'Brien, 610 A.2d 552, 555 (R.I. 1992) (citing R.I.G.L. § 34-7-1). The burden falls upon the claimant to prove each element of adverse possession by "strict proof, that is, proof by clear and convincing evidence." SeeLocke, 610 A.2d at 555; Samuel Nardone Co. v. Bianchi,524 A.2d 1114, 1117 (R.I. 1987).
In the instant case, the evidence adequately demonstrates that Plaintiffs, for a period of over ten years, alone and without interference from Defendants regularly entered upon, used, and improved the disputed area, exercising unequivocal acts of ownership over it. Moreover, the Court believes and specially finds that Defendants did not make improvements to the disputed area or otherwise use it in any significant fashion at all during this time. Predicated upon this and, more specifically, its factual findings enumerated above, the Court finds that Plaintiffs have satisfied their burden of showing by clear and convincing evidence a continuous, actual, open, notorious, hostile, exclusive possession of the disputed area under a claim of right for the statutory period. See Gammons v. Caswell,447 A.2d 361, 368 (R.I. 1982) (citing 7 Powell The Law of RealProperty § 1018 at 740 (1981)) (stating, inter alia, that "[c]ultivating land, planting trees, and making other improvements in such a manner as is usual for comparable land have been successfully relied on as proof of the required possession"); see also generally Anthony v. Searle,681 A.2d 892, 897-98 (R.I. 1996) (detailing the aforementioned elements of adverse possession and explaining how each may be satisfied). Hence, there is nothing to prevent the ripening of title to the disputed area by adverse possession.
In so ruling, the Court is mindful of the circumstances surrounding the 1986 installation of a sprinkler system on Plaintiffs' property. Apparently, the sprinkler heads were not placed within the disputed area so as to run along Defendants' driveway — the mistaken boundary; they ran along the actual property line (on Plaintiffs' side of the boundary).[6] This led to the inference that Plaintiffs may have known the location of the actual property line in 1986, an inference contrary to their trial testimony. Even assuming arguendo that Plaintiffs possessed such knowledge, it is their acts in the disputed area, in distinction to their subjective beliefs as to ownership thereof, that determine if they have acquired title through adverse possession. Kendall v. Selvaggio, 413 Mass. 619, 624 (1992); see Gammons, 447 A.2d at 368. As has been shown, Plaintiffs' activities in the disputed area "constitute[d] `such a control and dominion over [it] as to be readily considered acts similar to those which are usually and ordinarily associated with ownership.'" See Peck v. Bigelow, 34 Mass. App. Ct. 551, 556 (1993) (citations omitted).[7]
One final point of contention involved Defendants' Exhibit F, a photograph taken in the fall of 1988. Relying primarily on this one photograph to make their point, Defendants contend that since the forsythia bush does not appear therein, the disputed area must have been landscaped some time during or after 1988. Though this argument, going to the length of Plaintiffs' adverse possession claim, is well-taken, it does not, in the opinion of this Court, affect the outcome in light of all the other credible evidence which the Court had before it. Photographs can be deceiving;[8] for instance, the angle of this particular photograph might be such that the bush is completely obscured by the oak trees.
After a careful examination and review of the testimony elicited at trial, all the full exhibits entered in this case, and the memoranda submitted by the parties, this Court finds that Plaintiffs have sustained their burden of proving adverse possession by clear and convincing evidence. Accordingly, the Court hereby renders judgment for Plaintiffs, awarding them title to the disputed area by adverse possession.[9]
Counsel for the prevailing party shall submit an appropriate judgment for entry.
[1] Because Mrs. Charren emphasized at trial that the disputed area was, in fact, all that Plaintiffs were pursuing, this decision will not address the other land owned by Defendants north of their driveway which Plaintiffs' complaint had also originally sought by adverse possession. The decision is thus strictly limited in affect to cover only the disputed area. See
Plaintiffs' Exhibit 10.
[2] The counterclaim, which in Count II makes specific reference to § 34-20-1 of our General Laws, alleges that in July of 1996, Plaintiffs and/or their agents intentionally entered upon Defendants' land without permission and cut down portions of Defendants' trees. Plaintiffs, on the other hand, state they were granted permission to do so.
[3] As to this issue, Plaintiffs state that they only sought permission to use Defendants' driveway (for that purpose); they did not seek, nor were they granted, permission to use the disputed area.
[4] To buttress this argument, Defendants introduced as exhibits a written survey from 1985 (the year Defendants first viewed their future home) showing the true property line, as well as some 1986 landscaping plans showing the potential uses to which the disputed area could be put (as well as noting the possibility of placing a fence along the true property line).
In response to this, however, Plaintiffs submit that the landscaping plan and the plot map are irrelevant to an adverse possession claim; it is Defendants' actions and activities on the land, not their subjective beliefs as to ownership, that ultimately determine whether Defendants can successfully defend a claim of adverse possession.
[5] There was also conflicting testimony and/or arguments concerning Plaintiffs' offer in 1996 to rent the disputed area, and Mr. Hayes' alleged statement that he needed to erect a fence to "reclaim" his property.
[6] On this issue, Mrs. Charren testified that she did not instruct the sprinkler company as to where to place the sprinklers, and that she did not know how or why they ended up putting the sprinkler heads where they did. The Defendants, on the other hand, claimed they expressly stopped the sprinkler company from placing the sprinkler heads on their property.
[7] Incidentally, the Court notes that the sprinklers still watered the disputed area.
[8] On this point, the Court notes that upon viewing Defendants' Exhibit F, it appears (presumably from the angle at which the photograph was taken) that there is one tree in the disputed area and not the two separate oak trees that undisputedly exist therein.
[9] Regarding Defendants' counterclaim for trespass, the Court hereby denies said counterclaim as Defendants have failed to carry their burden of proving that Plaintiffs went upon their land and cut trees without their permission. See Coulombe v.Bois, 80 R.I. 465, 98 A.2d 367 (1953).